```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEBRASKA


HOWARD SUMMERFORD,              )
                                )
               Plaintiff,       )         7:04CV5004
                                )
     v.                         )
                                )
COVENANT TRANSPORTATION, and    )         MEMORANDUM AND ORDER
JOHN-DAVID A. LANDS,            )
                                )
               Defendants,      )
                                )
          and                   )
                                )
B.D.R. TRANSPORT, INC., a       )
Vermont Corporation, and        )
COMMERCE AND INDUSTRY           )
INSURANCE COMPANY, a            )
subsidiary of American          )
International Group, a New      )
York Insurance Corporation      )
                                )
               Intervenors.     )
```

Pending before me are several motions related to the distribution of the proceeds of the settlement reached between the plaintiff and defendants. The remaining dispute in this case is between the plaintiff and the intervening parties. The intervenor asserts a subrogation interest in the settlement proceeds and moves for distribution under Vermont statute, 21 V.S.A. § 624, (filing 43); the plaintiff moves for an equitable distribution of settlement proceeds pursuant to Neb. Rev. Stat 48-118, (filing 35). Both parties have submitted evidence on these motions. The plaintiff has moved to strike portions of the intervenors' evidence, (filing 50), and has moved to submit additional surrebuttal evidence. (Filing 55).

The plaintiff's motion to submit surrebuttal evidence will be granted and the supplemental affidavit of Maren Chaloupka dated March 28, 2005 has been considered herein.  The plaintiff's motion to strike challenges both the substance and admissibility of the filing 44 affidavit of Robert Allen.  The court will not strike an affidavit merely because it contains facts contrary to the plaintiff's version of the events.  As to the disputes of fact and the admissibility issues raised by plaintiff's motion to strike and the evidence offered in support of the parties' cross-motions for distribution, the following statement of facts relies on only those portions of the affidavits and attachments that are both admissible and undisputed.

On November 16, 2002, the plaintiff, Howard Summerford, while working as a truck driver for B.D.R. Transport Inc., was injured in a motor vehicle accident.  At the time of the accident, Summerford was located in the sleeper cab of the BDR truck.  The truck was experiencing engine problems and was parked on the shoulder of Interstate 80 near Paxton, Keith County, Nebraska.  The accident occurred when a Covenant Transportation, Inc. truck swerved onto the shoulder of the road and hit the parked BDR truck.

Summerford is a resident of New Hampshire.  BDR is a Vermont corporation.  Within four days after the accident, BDR presented Summerford with documents to file for workers' compensation benefits under Vermont law.  Summerford completed those documents and began receiving workers' compensation benefits shortly thereafter.

On May 20, 2003, Summerford retained Mr. Jonathan Frizzell, an attorney from New Hampshire, to pursue a third-party claim

against Covenant Transportation, Inc. and its driver, John-David Lands, (collectively referred to herein as "Covenant"). By the time Mr. Frizzell was retained, Summerford had already received workers' compensation benefits for approximately six months, and he continued to receive such benefits during his litigation against Covenant. As to all of workers' compensation amounts paid by B.D.R. Transport Inc. and its workers' compensation insurer, Commerce and Industry Insurance Company (collectively referred to herein as "BDR"), Summerford's right to receive and the amount of compensation benefits owed was determined under Vermont workers' compensation law. Filing 49, attachment 3, Frizzell affidavit and exhibits thereto; filing 52, Summerford affidavit. As of February 24, 2005, BDR had paid a total of $143,052.21 in workers' compensation benefits. Filing 44, (Allen affidavit) attachment 9; filing 56, (Chaloupka affidavit), ¶ 3.

Summerford filed suit in this court against Covenant claiming negligence and a right to recover common law damages under Nebraska tort law. BDR was not a party to the action either at the time of filing suit or the time of the settlement of the claim between Covenant and Summerford.

Though the parties disagree as to the cooperative effort provided by BDR's counsel during the course of the Summerford/Covenant litigation, the record reflects that during the course of the litigation, BDR's counsel and plaintiff's counsel "kept each other up to date in a rather professional, reasonable, and responsible manner." Filing 49, (Chaloupka affidavit), ex. 4. BDR provided access to documentation as requested concerning the medical care and expenses related to Summerford's workers' compensation claim, along with updated workers' compensation lien amounts, to assist Summerford's

counsel in litigating the claim against Covenant.[1]  Filing 38, ex. 1 (Chaloupka affidavit), exs. G-O.  BDR's counsel did not, however, conduct or attend depositions to pursue the case against Covenant.  See filing 38, exhibits 2-4; filing 49 (Chaloupka affidavit), exs. 1-4.

The suit between Summerford and Covenant was successfully mediated on November 12, 2004, with Covenant agreeing to pay Summerford $225,000.00 for all plaintiff's economic and noneconomic damages arising from the November 16, 2002 truck accident.  Filing 38, ex. 1 (Chaloupka affidavit) ex. A.  Plaintiffs' counsel had advised BDR of the scheduled mediation, but BDR did not attend.  Filing 38, ex. 1 (Chaloupka affidavit) ex. F; filing 49, (Chaloupka affidavit), exs. 4 & 5.

Of the $225,000 settlement paid by Covenant, Summerford's counsel retained $90,000.00 (or 40%) pursuant to their contingency fee agreement with the plaintiff, and $14,328.20 for

---

[1] There appears to be a controversy as to whether BDR refused to produce to the plaintiff the written report of Doctor William Boucher who performed an IME of the plaintiff at the compensation carrier's request.  See filing 38, exhibit 1 (Chaloupka affidavit) exs. K-O.  Plaintiff's counsel claims BDR's failure to produce the Boucher report hindered Summerford in proving the nature and extent of his injuries and obtaining a damage recovery from Covenant.  Filing 49, attachment 2 (Frizzell affidavit) ¶ 3.

I cannot conclude that BDR acted or failed to act in a manner that prejudiced Summerford's claim against Covenant.  According to the record, Dr. Boucher does not always generate a written report of his IME findings.  Filing 38, ex. 1 (Chaloupka affidavit), ex. H; filing 49, (Chaloupka affidavit), ex. 2.  There is nothing in the record to indicate a Boucher IME report regarding his examination of Summerford exists.  Moreover, even if it exists but was withheld by BDR, there is no evidence that Dr. Boucher's reported findings would have helped rather than undermined Summerford's damage claims against Covenant.

costs incurred for the litigation.  $2,671.80 was distributed to the plaintiff, and the remainder ($118,000.00) is held in trust pending a determination of BDR's right to subrogation for amounts paid as workers' compensation.  Filing 38, ex. 1 (Chaloupka affidavit), exs. B-D.  BDR's workers compensation lien as of the time of mediation was $118,000.  Filing 56, (Chaloupka affidavit), ¶ 3.

BDR was not a party to the contingency fee contract between Summerford and his counsel, and BDR never agreed to pay plaintiff's counsel a 40% contingency fee on any recovery from Covenant.  Filing 38, ex. 1 (Chaloupka affidavit), ex. P.; filing 49, (Chaloupka affidavit), ¶ 3.  Prior to the mediation, Summerford's counsel, Mr. Frizzell, confirmed that BDR was seeking to recover two-thirds of its gross lien amount.  Filing 44, (Allen affidavit), ¶ 7.  However, at the time of the mediation, plaintiff's counsel claimed Nebraska law, not Vermont law, applied to BDR's subrogation claim and under Nebraska law, BDR may have a lien but, since Summerford was not "made whole" by the settlement ultimately reached with Covenant, BDR was not entitled to recover on that lien.  Filing 38, ex. 1 (Chaloupka affidavit), ex. E; filing 49, (Chaloupka affidavit), ex. 8.

The dispute now before the court is whether, and to what extent, BDR is entitled to assert a right of subrogation against the settlement proceeds owed to Summerford by Covenant.  With regard to this dispute, the parties' motions and briefs raise the issue of whether Vermont or Nebraska law applies to BDR's subrogation claim.  BDR argues it is entitled to "dollar-for-dollar" recovery under Vermont law.  Summerford demands an equitable distribution under Nebraska law and, relying on <u>Blue Cross/Blue Shield v. Dailey</u>, 268 Neb. 733, 687 N.W.2d 689 (2004)

and Jenson v. Board of Regents, 268 Neb. 512, 584 N.W.2d 537 (2004), argues that since he was not "made whole" by the $225,000 settlement with Covenant, the value of BDR's equitable interest is zero.

A federal district court sitting in Nebraska must follow Nebraska's conflict of laws rules in determining which state's law applies. F.D.I.C. v. Nordbrock, 102 F.3d 335, 337 (8th Cir. 1996)(citing Modern Computer Systems, Inc. v. Modern Banking Systems, Inc., 858 F.2d 1339, 1342 (8th Cir. 1988)). The Nebraska Supreme court, in Turney v. Werner Enterprises, Inc., 260 Neb. 440, 445, 618 N.W.2d 437, 440 (2000) held that an employer's or insurer's subrogation interest in an injured employee's recovery from a third party is determined by the law of the state in which the employee obtained workers' compensation benefits. Id. (citing a Vermont case, LaBombard v. Peck Lumber Co., 141 Vt. 619, 451 A.2d 1093 (1982), and Van Den Heuval v. Wallace, 382 Pa. Super. 242, 555 A.2d 162 (1989); Perry v. Carter, 620 S.W.2d 50 (Mo. App. 1981); 9 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 144 (1999)).

Summerford received his workers' compensation benefits from BDR under Vermont law. The plaintiff's brief argues that he could have sought workers compensation recovery under Nebraska law since his accident occurred in this state. The plaintiff appears to be claiming that he never actually chose to receive benefits under Vermont law. The clear implication of the argument is that BDR was obligated at the outset to inform Summerford of his right to elect workers compensation benefits under Nebraska law and, having failed to do so, BDR is estopped from relying on Vermont law to obtain recovery on its subrogation claim. The plaintiff has not cited and I have found no law to

support that argument.  Moreover, there are no facts to support a claim that at the time the decision was made, had Summerford been fully informed of the option, he would have elected to recover under Nebraska's workers' compensation statutory scheme instead of Vermont's.  Each state's laws vary, and there is no evidence comparing the actual benefits afforded Summerford under Vermont law to those he could have received under Nebraska law.

The facts of this case do not implicate Nebraska public policy in such a manner as to afford an exception to the choice of law analysis announced in <u>Turney</u>.  The rights of Nebraska residents or citizens are not at issue; Nebraska's only connection with this case is that the accident occurred in Nebraska.  See e.g., <u>LaBombard</u>, 141 Vt. 619, 451 A.2d 1093 (though Connecticut law was less generous, where a worker employed by a Connecticut firm was injured in Vermont and received workers' compensation benefits under Connecticut law, application of Connecticut law did not violate Vermont public policy).  While Summerford could have recovered benefits under Nebraska law, there is no evidence of overreaching or fraudulent conduct by BDR in affording benefits under Vermont workers' compensation law.  Simply stated, there is nothing inappropriate or inherently suspect about a Vermont corporation approaching its employee within four days of a work-related accident to assist him in obtaining workers' compensation benefits under Vermont law.

Having found no factual or legal reason to deviate from Nebraska's clear pronouncement on this choice of law issue, I conclude that Vermont law applies to BDR's subrogation claim because Summerford received his workers' compensation benefits under Vermont law.

Vermont workers' compensation law provides:

> In an action to enforce the liability of a third party, the injured employee may recover any amount which the employee or the employee's personal representative would be entitled to recover in a civil action. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable under this chapter to date of recovery, and the balance shall forthwith be paid to the employee or the employee's dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits.

21 V.S.A. § 624(e). Where the injured employee recovers both economic and noneconomic damages from a third party, the plain language of § 624(e) controls, and the workers' compensation carrier may recoup the entirety of the compensation benefits paid to the plaintiff from the plaintiff's recovery against a third party. Brunet v. Liberty Mut. Ins. Group, 165 Vt. 315, 317, 682 A.2d 487, 488 (1996).

In direct contrast to Summerford's argument herein, Brunet specifically held that regardless of whether a claimant has been fully compensated for both economic and non-economic damages through a third party recovery, the carrier in entitled to recover its lien against the amount received from the third party.[2] Brunet reasoned:

---

[2] Even were I to apply Nebraska law, I seriously question whether the "made whole" principles announced in Shelter Insurance Co. v. Frolich, 243 Neb. 111, 498 N.W.2d 74 ((1993), and its progeny Blue Cross/Blue Shield v. Dailey, 268 Neb. 733, 687 N.W.2d 689 (2004) and Jenson v. Board of Regents, 268 Neb. 512, 584 N.W.2d 537 (2004), are applicable to subrogation interests created under and governed by Nebraska's workers' compensation statutory law. See Neumann v. American Family Ins., 5 Neb. App. 704, 563 N.W.2d 791 (1997).

8

> In exchange for the benefit of receiving prompt and certain compensation, the employee must reimburse the carrier if an award is obtained from a third party. This rule may seem inequitable where, as here, the third-party award does not fully compensate the injured employee. In actuality, however, the workers' compensation statute has guaranteed plaintiff the substantial benefit of prompt and certain compensation for his economic losses, and has cost him nothing. Absent the statute, plaintiff would have received no more, and probably less, than he will ultimately recover here. Had the tortfeasor not conceded liability, plaintiff would have had to go to trial to recover anything at all, and in any case his recovery would have been limited by the tortfeasor's ability to pay.

Brunet, 165 Vt. at 318, 682 A.2d at 489.

Summerford's suit against Covenant sought recovery of both economic and noneconomic damages under Nebraska negligence law. In settling that claim, Summerford accepted $225,000.00 from Covenant as compensation for his "damages, costs, loss of services, expenses, consequential damages, and any other claim whatsoever" arising from the November 16, 2002 accident. Under 21 V.S.A. § 624(e), BDR is entitled to recover amounts it paid in workers' compensation benefits to the plaintiff minus the "expenses of recovery."

Under Vermont law, the "expenses of recovery" includes BDR's pro rata share of the reasonable attorney's fees and expenses incurred in prosecuting the third party action. See Brunet, 165 Vt. at 318, 682 A.2d at 489 (reversing and remanding "for a computation of the attorney's fees and expenses incurred in prosecuting the third party action"). Although not specifically discussed in the context of Vermont workers' compensation law, Vermont has adopted the "common fund" doctrine. Guiel v.

9

Allstate Ins. Co., 170 Vt. 464, 468-69, 756 A.2d 777, 780-81 (2000).  "[U]nder appropriate circumstances, the common fund doctrine may be applied to require an insurer to pay a proportionate share of the attorney's fees incurred by its insured in obtaining a judgment or settlement that satisfies the insurer's subrogated interest."  Id. at 469, 756 A.2d at 781. As explained by Guiel, the common fund doctrine may be applied only after the trial court examines all the circumstances of the case, including a comparison of the efforts expended by plaintiff's counsel compared to that of the subrogated party's counsel in securing a recovery from the third party.  When the party holding a subrogation interest did not actively participate in or substantially contribute to obtaining a third party settlement recovery, that party is not entitled to a reduction in the reasonable costs of attorneys fees and expenses incurred to secure the settlement.  The insurer asserting the subrogation claim cannot, in equity, sit back an wait to benefit from the efforts of plaintiff's counsel and then not pay for them.  Id.

     Upon review of the evidence, I conclude that although BDR did not impede the plaintiff's suit and did share the information it had with the plaintiff, it did not actively assist the plaintiff in litigating his case against Covenant.  I therefore conclude BDR must pay the full amount of its proportionate share of the reasonable expenses incurred to obtain a settlement from Covenant.

     The proportion to be applied depends on the value of BDR's lien.  The value of BDR's lien at the time of settlement was $118,000, but BDR asserts a lien in this case in the amount of $143,052.21, (the amount it had paid as of February 25, 2005). Vermont's statutory scheme for reimbursing the subrogated party

contemplates the plaintiff may continue to receive workers' compensation benefits from the employer even after the third party settlement is reached and the employer's subrogated interest is paid.  In discussing the public policy behind 21 V.S.A. § 624(e), Brunet explained that "although [the plaintiff] must commit his award to reimbursing the carrier, he retains the benefit of ongoing workers' compensation payments, the total value of which may exceed that of the third-party award." Brunet, 165 Vt. at 318, 682 A.2d at 489.  I therefore conclude that under Vermont law, BDR's subrogated interest is valued as of the time of the settlement, and it does not include payments made thereafter and until February 25, 2005.

     BDR's $118,000 subrogation interest represents 52.4% of plaintiff's $225,000 settlement.  Accordingly, BDR is entitled to $118,000 minus its share of the reasonable expenses incurred to secure that settlement.  There has been no discussion, either in the briefs or the affidavits, challenging the reasonableness of the amounts the plaintiff listed as costs in this case.  I therefore conclude BDR must pay 52.4% of the total $14,328.20 costs incurred by the plaintiff herein.

     However, as to the contingency fee, the evidence establishes that BDR never agreed to and objected to paying a forty percent contingency fee.  Prior to the mediation, BDR stated and Mr. Frizzell acknowledged that BDR expected to receive its subrogation interest minus a one-third contingency fee.  The plaintiff has offered no evidence to support the reasonableness of imposing a forty percent contingency fee under the facts of this case.  The court is mindful that such fee agreements exist, but BDR was not a party to the plaintiff's fee agreement. Imposing a one-third contingency fee was acceptable to BDR, and

is a standard industry practice in this area, especially when the case settles prior to the pretrial conference. A one-third contingency fee seems especially reasonable in this case because, under the facts alleged in the complaint, Covenant's truck hit a lawfully parked vehicle, and the plaintiff was a passenger in that parked vehicle. Liability was likely not a significant hurdle to overcome in reaching a settlement.

I therefore conclude that BDR's $118,000 subrogation recovery must be deducted by one-third to pay the reasonable attorney fees incurred to secure a settlement, and by $7507.98 (52.4% of $14,328.20) to pay its proportionate share of costs related to the litigation against Covenant. Accordingly, BDR will be awarded $71,158.69 in payment of its subrogation interest in the proceeds Summerford receives from his settlement with Covenant.

    IT THEREFORE HEREBY IS ORDERED:

1. The plaintiff's motion to strike portions of the filing 44 affidavit of Robert Allen, filing 50, is granted in part and denied in part. As to the admissibility issues raised by the motion, the court has relied on only those portions of the affidavits and attachments that are admissible under the Rules of Evidence.

2. The plaintiff's motion to submit surrebuttal evidence, filing 55, is granted, and the Affidavit of Maren Chaloupka dated March 28, 2005 has been considered in ruling on this case.

3. The plaintiff's motion for equitable distribution of settlement proceeds pursuant to Neb. Rev. Stat 48-118, filing 35, is denied.

4. The intervenors' motion to recover their workers' compensation subrogation interest pursuant to Vermont statute, 21 V.S.A. § 624, filing 43, is granted. The intervenors are entitled to recover $71,158.69 from the

      settlement proceeds received by the plaintiff in
      settlement of his suit against the defendant.

DATED this 23rd day of March, 2005.

                              BY THE COURT:

                              s/ *David L. Piester*
                              David L. Piester
                              United States Magistrate Judge